**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

MICHAEL YOUNG                              CIVIL ACTION

VERSUS                                     NO. 17-6329

JAMES M. LEBLANC, ET AL.                   SECTION "B"(4)

<u>REPORT AND RECOMMENDATION</u>

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915, and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**. On October 3 and 17, 2017, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by telephone.[2] Upon review of the record, the Court has determined that this motion can be disposed of without an evidentiary hearing.

I.    <u>Factual and Procedural Background</u>

      A.    <u>The Complaint</u>

      The plaintiff, Michael Young ("Young"), is an inmate housed in the B.B. "Sixty" Rayburn Correctional Center ("RCC") in Angie, Louisiana.[3] Young filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 asserting that he has been denied protective custody at the RCC. Young alleges that Officer Jules Herbert spread rumors to the other inmates on the RCC Sleet Unit that Young was a "rat" or snitch who was reporting to prison officials about all matters

---

[1]766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims. The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 15 and 17. The hearings were digitally recorded.

[3]Rec. Doc. No. 4.

occurring on the unit.  Young alleges that this placed him in danger of harm at the hands of the other inmates, including the fifty-two (52) inmates on Sleet Unit who were placed there for reasons of protection, mental health issues, and discipline.

Young asserts that Officer Herbert spread the rumor as retaliation for a PREA[4] complaint he filed against Herbert in September 2015.  Young claims that, at the time, he was on extreme suicide watch and strapped by soft restraints to his steel bunk in Sleet Unit 4R, cell 3.  Officer Herbert and Officer Jeff Rogers entered his cell to check his restraints.  Young alleges that Officer Herbert stood very close to the bunk and put his "private parts" in Young's face.  Young claims that Herbert made sexual remarks about the size of his private parts and Officer Rogers stood by blocking the camera and making sexual comments.

Young alleges that he reported the incident to Major Luper on the night shift and the matter was reported to Major Darryl Mizell.  He further alleges that inmates Rodney Thornton and Percy Johnson[5] told the social worker, defendant Gina Todd, what the officers had done to Young, and she failed to report the acts as PREA violations.  Young also reported the incident to Reentry Specialist Amy Stogner on September 16, 2015.  Stogner, however, did not make a PREA report.

Young further alleges that, on October 8, 2015, he appeared before a review board at RCC seeking protective custody, because Officer Herbert was calling him a "rat."  His request was denied.  On November 17, 2015, Young filed an administrative grievance complaint, number 797, on the same issue, but it was placed on back log because Young had too many other grievances pending.

---

[4]Young is referring to the Prison Rape Elimination Act of 2003.

[5]At the *Spears* Hearing, Young identified this inmate as Percy Jackson.

Young alleges that he filed another unsuccessful request for protection on December 18, 2015, and also wrote to Deputy Warden Keith Bickham and Assistant Warden Beverly Kelly about his concerns. Warden Bickham responded and explained that, because Young was already a level one inmate assigned to the secured Sleet Unit, there was no need to change his designation to that of protective custody. Young alleges that Warden Kelly passed her letter from Young to Herbert's supervisor, Lieutenant Rigdon, who interviewed the inmates Young listed in his protection request. Rigdon later reported back to the grievance review committee that the inmates had no problems with Young. He claims, however, that one of the inmates almost assaulted him the same night as the committee hearing.

Young further claims that, several months later, on June 2, 2016, he received a response to his backlogged grievance number 797, which was filed on November 17, 2015. In that answer, former RCC Warden Sandy McCain denied him all requested relief. His appeal from that decision was also denied by Secretary James M. LeBlanc of the Louisiana Department of Corrections ("DOC").

Young further claims that, on November 13, 2016, he was attacked by another inmate while waiting to be seen in sick call. As a result, he suffers headaches from having his head beaten against the wall and now requires glasses for his vision. Soon after this attack, he was taken to see Captain Hillman, Colonel Harrell, and inmate counsel to discuss the numerous protective custody requests Young had filed. Young claims that Colonel Harrell told him that it was understandable that he should be provided protection from the inmate who attacked him, but that he also believed that there was good reason why Young was assaulted by the inmate. Young claims that this demonstrates a lack of concern for his safety.

Thereafter, on November 18, 2016, Young appeared before Major Tim Crawford to address his requests for protection after the November 13, 2016 incident. Major Crawford denied him relief and made a statement about Young having a big mouth. Despite this, Young claims that Major Crawford ordered that he be moved to Sun Unit 3R. However, when Officer Timothy Maples arrived at his cell, he told Young he was moving to Sun Unit 4R. Young claims that he told Maples that he had a documented enemy, inmate JeVon Bass, on that tier and that Crawford said he was sending him to Sun Unit 3R. Officer Maples left without moving Young and reported that Young refused to come out of his cell.

As a result, Young received a disciplinary violation for refusing to move to Sun Unit 4R. He claims that, when he appeared before Colonel Craig Kennedy and Captain Ronnie Seal for a disciplinary hearing on November 21, 2016, Major Crawford confirmed, as Officer Maples stated, that Young was to be sent to Sun Unit 4R and not Sun Unit 3R. Young claims that the officers conspired against him to move him into known danger. RCC Warden Robert Tanner and Secretary LeBlanc denied Young's appeals.

Young claims that Crawford, Bickham, and Kelly have not taken his protection requests seriously. He is concerned that the repeated denial of protective relief will allow the risk of danger to continue. Young complains that after he was released from the secured cell on Sleet Unit, he was still denied special protection from other inmates in general population. He alleges that he will not go to the recreation area because he fears he will be assaulted. He claims that he wrote defendants Tanner, McCain, Bickham, and Kelly about this, but none have responded to his letters.

Young further contends that he was assaulted again on January 31, 2017. The assault apparently occurred after Captain Seal moved a six-foot (6') tall, homosexual inmate into Young's cell. Young claims that he is only four-foot eleven-inches (4'11") in height. Young alleges that

the inmate attacked him, and they both received disciplinary violation reports. He tried to explain to defendants Crawford, Tanner and LeBlanc in the disciplinary and appeals process that he was defending himself, but he was still, nonetheless, given a disciplinary punishment.

Young sued the defendants, DOC Secretary LeBlanc, former Warden McCain, Warden Tanner, Deputy Warden Bickham, Assistant Warden Kelly, Colonel Kennedy, Major Jeff Williams, Major Crawford, Captain Seal, Gina Todd, Amy Stogner, and Officer Herbert, asserting the denial of his constitutional rights to safety as a humane condition. Young alleges that the defendants violated his constitutional rights to reasonable safety through failure to protect and keep him from harm at the hands of other inmates. He contends that the defendants knew he faced a substantial risk of serious harm and disregarded his safety by failing to place him in protective custody or transfer him to another facility when he labeled a "rat" by a prison officer and assaulted by other inmates. He also asserts state law claims of negligence and breach of the duty to protect.

As relief, Young seeks compensatory damages and an order requiring Secretary LeBlanc and Warden Tanner to transfer him out of RCC to a prison closer to his home, like Elayn Hunt Correctional Center or Dixon Correctional Institute.

### B.    <u>Spears Hearing Testimony</u>

In the *Spears* Hearings, Young testified that he is housed in RCC while serving a ten (10) year sentence for distribution of cocaine. He has been treated for schizophrenia and bipolar disorder since age eleven (11) and is regularly prescribed depakote[6] and trazodone.[7] He stated that he learned in August of 2015 that his mother was dying of cancer, and she eventually died on

---

[6]Depakote is used to treat seizure disorders, certain psychiatric conditions during the manic phase of bipolar disorder, and to prevent migraine headaches. https://www.webmd.com.

[7]Trazodone is used to treat depression and may improve mood, appetite, and energy level, as well as decrease anxiety and insomnia related to depression. https://www.webmd.com.

September 25, 2015.  In August, he was distraught over the news of her illness and reported that he was suicidal.  Dr. Gamble at the prison had him placed on extreme suicide watch and temporarily stopped his medications.  As part of the extreme suicide watch, he was strapped to his bed with soft restraints.

On September 14, 2015, Officers Herbert and Rogers entered his cell to check his restraints. Officer Rogers blocked the camera while Officer Herbert, although clothed, leaned over and put his private parts in Young's face while commenting on the size of his genitalia.  Young testified that Rogers also made inappropriate sexual comments.[8]

Young further testified that he reported the incident to Major Luper and called the PREA hotline.  He claimed that after his PREA complaint, Herbert was not at work for a few days.  Young stated that, when he returned, Officer Herbert told other inmates on the tier that Young had "ratted" him out or reported him and other inmates to the ranking officers.  Young stated that, each time Herbert disciplined an inmate on the tier, he would tell the inmate that Young reported the inmate. Young testified that, at the time, he was still on extreme suicide watch and did not know what was going on around the tier to report anything or anyone.  Young claimed that Herbert's actions placed him in danger on the Sleet Unit.

Young also testified that, in October 2015, he filed an administrative grievance complaint against Herbert and sought protection from him and other inmates.  The prison officials, however, would not allow him to file for protection from Herbert; so, he pursued the request against the other inmates.  Young claims that the request was denied because he was already a level one inmate segregated in a secure cell without a cellmate.  His appeals to Warden McCain and Secretary LeBlanc were unsuccessful.

---

[8]Young testified that Rogers is no longer employed at the prison; so, he chose not to name him as a defendant.

Young claims that he was assaulted by other inmates on December 18, 2015; February 1, 2016; and May 4, 2016, which he believes were related to Officer Herbert's rumor. Young conceded that he received disciplinary charges in connection with all three fights in which he was involved, but two of those charges were dismissed. He received a loss of good-time credits as punishment for the other violation.

Young stated that he believes that on February 1, 2016, Officer Herbert encouraged the other inmate to fight with him, but he blamed the fight on Young. Young also explained that on May 4, 2016, he was housed in a cell next to that of inmate JeVon Bass. Young claims that Bass attempted to assault him, so he requested protection. When the report was filed, the officer who wrote it indicated that Young had reported that Bass threw something on him. After this, inmate Bass told other inmates on the tier that Young was the "rat" that reported him to prison officials. Major Crawford denied Young's request to be moved to another tier because Young was already in a single-man cell and claimed to have enemies everywhere.

Young claimed that he also was denied protective custody after he was moved off of Sleet Unit on July 6, 2016 and was no longer a level one inmate. On November 13, 2016, while in a different area of the prison, Young claimed he was assaulted by inmate Charles Stewart, who punched and beat him. This attack left him suffering with headaches and needing glasses. He indicated that he was already taking medication for residual pain from an old gunshot wound and could not be given more for the headaches. Young also claimed that he received a disciplinary violation for fighting, but it was later dismissed.

After this fight, Young was moved to Sun Unit L1, cell 4, and was not in protective custody. On January 31, 2017, Young claims Captain Seal erroneously put a very large, homosexual inmate, Robert Green, in the same cell. Young claimed Green called Young a rat and attacked him. Young

stated he was not the aggressor, but Major Crawford found both inmates guilty of a disciplinary rules violation for fighting.

Young further testified that he was attacked by another inmate named Langley in August of 2017, after this suit was filed. The disciplinary violation he received was later dismissed at a disciplinary hearing before Major Crawford. Young also stated that, on September 27, 2017, he was beaten by his cellmate, because another inmate, Zaran Johnson, told the cellmate that Young was a rat. After this, he and his cellmate were moved and given disciplinary violations and sanctioned by a disciplinary panel that was headed by Major Crawford.

Young stated that he sued Secretary LeBlanc, Warden McCain, and Warden Tanner because they denied his grievance appeals without further investigation, even though he was still being assaulted at the prison. Young also testified that he sued Deputy Warden Bickham because Bickham was indifferent to the dangers he faced and blamed Young for causing his own troubles. Young also claimed that Bickham told him to stop filing complaints against the officers.

He sued Assistant Warden Kelly in the medical unit because she did not provide him protection. Young concedes, however, that she responded to his letters and explained to him how to file a request for protection.

He also sued Major Crawford, Colonel Kennedy, and Major Williams because they were on the review panels that denied his various requests for protection. He also complains that Williams was on a panel that found him guilty of aggravated disobedience for refusing Officer Rogers's directive to have his hair cut. Young admits that he was guilty, but explained the officers were aggravating him. Young also blamed Major Williams for not adequately investigating the February 1, 2016, fight he had on Sleet Unit, which he blamed on Officer Herbert.

Young stated that he sued Captain Seal for conspiring with Majors Kennedy and Crawford to deny him protection and for changing the transfer order from tier R4 to R3, which led to one of his disciplinary violations.  He also blames Seal for the fight he had with the homosexual cellmate, claiming that Seal had no authority to put that inmate in his cell.

Young also testified that he sued Gina Todd and Amy Stogner for failing properly to report his PREA complaints against Officer Herbert or report the information from inmates Rodney Thornhill and Percy Jackson,[9] who confirmed that Herbert and the other officer were mistreating him and playing sexual games on September 14, 2015.  He concedes that he did not file grievance complaints at the prison against Todd or Stogner about these incidents.

## II.    Standards for Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist."  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d

---

[9]In his complaint, Young identified this inmate as Percy Johnson.

882, 889 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28).  Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.    Analysis

Young's claims asserted against the defendants, Secretary LeBlanc, Warden McCain, Warden Tanner, Deputy Warden Bickham, Assistant Warden Kelly, Colonel Kennedy, Major Williams, Major Crawford, Captain Seal, Ms. Todd, Ms. Stogner, and Officer Herbert, who each have been named in an individual and official capacity, can be fairly summarized as asserting a violation of his right to safety and protection from injury at the hands of other inmates and the failure to provide adequate review of his complaints and grievances.  He also asserts that Officer Herbert harassed and retaliated against him in response to the PREA complaint lodged on September 14, 2015.  For this, he seeks monetary damages and transfer to another facility.

### A.    Claims Against Defendants in an Official Capacity

When a constitutional violation is alleged, § 1983 provides a federal cause of action against any person who, acting under color of state law, deprives another of his constitutional rights.  42 U.S.C. § 1983.  *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994).  A plaintiff must prove both the constitutional violation and that the action was taken by a "person" under color of state law.  *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978); *Polk County v. Dodson*, 454 U.S. 312 (1981).  In an official capacity, however, the defendants are not persons subject to suit under § 1983 and they

10

are otherwise immune from suit for damages.  *Will v. Mich. Dep't of St. Pol.*, 491 U.S. 58 (1989); *Stotter v. Univ. of Tex.*, 508 F.3d 812, 821 (5th Cir. 2007).

In keeping with its long-standing doctrine, the Supreme Court has held that, when a state actor is sued in his official capacity, the action is considered to be one taken against the department he represents.  *See Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978).  LeBlanc is the secretary of the DOC, which is a department within the Louisiana state government. La. Rev. Stat. Ann. § 36:401.  The remaining defendants are all employed at RCC, which is a state DOC facility.  *See, e.g., Francois v. Rigdon*, No. 08-3485, 2009 WL 1379723, at *4 (E.D. La. May 14, 2009); *Demouchet v. Rayburn Corr. Ctr.*, No. 07-1694, 2008 WL 2018294, at *3 (E.D. La. May 8, 2008).  Suit against these defendants in an official capacity is suit against the DOC.  *Id.*

For Eleventh Amendment purposes, the DOC is considered an arm of the state since any money judgment against it or its subdivisions necessarily would be paid from state funds. *Anderson v. Phelps*, 655 F. Supp. 560, 564 (M.D. La. 1985); *Champagne v. Jefferson Parish Sheriff's Off.*, 188 F.3d 312, 313-14 (5th Cir. 1999).  Therefore, suit against the DOC, and its employees in their official capacities, implicates the Eleventh Amendment immunity doctrine and the jurisdiction of this federal court.  *Muhammad v. Louisiana*, No. 99-2694 c/w 99-3742, 2000 WL 1568210 (E.D. La. Oct. 18, 2000); *Citrano v. Allen Corr. Ctr.*, 891 F. Supp. 312, 320 (W.D. La. 1995) ("A suit against any state correctional center would be suit against the state and therefore barred by the Eleventh Amendment.") (citing *Anderson*, 655 F. Supp. at 560 and *Building Engr. Serv. Co., Inc. v. Louisiana*, 459 F. Supp. 180 (E.D. La. 1978)).

The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State.  *Pennhurst St. Sch. v. Halderman*, 465 U.S.

89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185-86 (5th Cir. 1986). A state may expressly waive this Eleventh Amendment sovereign immunity. *See Seminole Tribe v. Florida*, 517 U.S. 44, 53-54 (1996); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. Dep't of Highways*, 780 F.2d 1268, 1271-73 (5th Cir. 1986). The State of Louisiana has neither consented to suit nor waived its Eleventh Amendment sovereign immunity.

To the contrary, Louisiana Revised Statute Annotated Section 13:5106(a) provides that "[n]o suit against the state or a state agency ... shall be instituted in any court other than a Louisiana state court." Without a waiver, the Court is without jurisdiction to hear Young's claims for monetary relief against the DOC or its employees in an official capacity. *See Warnock v. Pecos Cty., Tx.*, 88 F.3d 341, 343 (5th Cir. 1996).

The claims against the defendants, Secretary LeBlanc, Warden McCain, Warden Tanner, Deputy Warden Bickham, Assistant Warden Kelly, Colonel Kennedy, Major Williams, Major Crawford, Captain Seal, Ms. Todd, Ms. Stogner, and Officer Herbert, each in an official capacity, must be dismissed as frivolous for lack of jurisdiction, for failure to state a claim for which relief can be granted, and for seeking monetary relief against immune defendants pursuant to 28 U.S.C. § 1915(e), § 1915A, and as applicable, 42 U.S.C. § 1997e.

The Supreme Court has recognized an exception to the Eleventh Amendment doctrine that would not protect state officials in an official capacity from suit for certain declaratory and prospective injunctive relief. *Ex Parte Young*, 209 U.S. 123, 155-56 (1908); *Saltz v. Tenn. Dep't of Emplt. Sec.*, 976 F.2d 966, 968 (5th Cir. 1992); *see K.P. v. LeBlanc*, 627 F.3d 115, 124 (5th Cir. 2010). Young has included a request for injunctive relief in the form of an order for Secretary LeBlanc and Warden Tanner to transfer him to a different facility. However, for the reasons that

follow in this Report, Young has no constitutionally protected right to a transfer or to be housed in a particular facility, and, therefore, has is not entitled to the injunctive relief he seeks. Thus, any remaining claim for injunctive relief against Secretary LeBlanc and Warden Tanner in an official capacity should also be dismissed as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and as applicable, 42 U.S.C. § 1997e.

> **B.**     **<u>Claims Against Defendants in an Individual Capacity</u>**

Young's claims, broadly construed,[10] allege that on September 14, 2015, Officer Herbert made inappropriate sexual gestures and comments towards him. He claims that defendants Todd and Stogner failed to report the incident under PREA. Young further alleges that, in retaliation for his reporting of that event, Herbert identified him as a snitch to the other inmates on Sleet Unit, which heightened the threat of harm upon him by other inmates. He also claims that, on February 1, 2016, Herbert caused an inmate to attack Young and blamed Young for the fight. Young further alleges that the other defendants failed to provide him adequate review of his complaints and protection from harassment by Herbert and attack by other inmates when they denied his various requests to be placed in protective custody.

> **a.**     **<u>Some Claims Have Prescribed</u>**

Young's complaint as supplemented by his *Spears* Hearing testimony addresses a number of episodic events that occurred between September 14, 2015 and August of 2017, just after he filed the instant complaint. As indicated below, a number of these events occurred over one year prior to the filing of the complaint and are barred by the applicable statute of limitations.

---

[10]*Pro se* civil rights complaints must be broadly construed. *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002) (a *pro se* prisoner's pleadings should be construed liberally in his favor).

The Court may raise the limitations or prescription issue *sua sponte* in a suit filed *in forma pauperis* under 28 U.S.C. § 1915. *Wilke v. Meyer*, 345 F. App'x 944, 945 (5th Cir. 2009); *Lopez-Vences v. Payne*, 74 F. App'x 398 (5th Cir. 2003) (citing *Gartrell v. Gaylor*, 981 F.2d 254, 256 (5th Cir. 1993)). "'Dismissal is appropriate if it is clear from the face of the complaint that the claims asserted are barred by the applicable statute of limitations.'" *Stanley v. Foster*, 464 F.3d 565, 568 (5th Cir. 2006) (quoting *Harris v. Hegmann*, 198 F.3d 153, 156 (5th Cir. 1999)).

Although Section 1983 has no statute of limitations, the one-year Louisiana prescription statute, La. Civ. Code art. 3492, applies to suits brought in federal court under § 1983. *Duplessis v. City of New Orleans*, No. 08-5149, 2009 WL 3460269, at *4 (E.D. La. Oct. 26, 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Wilson v. Garcia*, 471 U.S. 261, 275 (1985); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998); *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994); *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)); accord *James v. Branch*, No. 07-7614, 2009 WL 4723139, at *10 (E.D. La. Dec. 1, 2009) (citations omitted). Federal law, however, determines when a § 1983 claim accrues. *Jacobsen*, 133 F.3d at 319.

For purposes of calculating the limitations period, a § 1983 cause of action accrues when the plaintiff knows or has reason to know of the injury which forms the basis of his action. The Supreme Court has held that prescription begins to run at the point when "the plaintiff can file suit and obtain relief." *Duplessis*, 2009 WL 3460269, at *5 (quoting *Wallace*, 549 U.S. at 388) (citing *Jacobsen*, 133 F.3d at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998)); accord *Dixon v. Cooper*, 260 F. App'x 728, 729 (5th Cir. 2007); *Piotrowski v. City of Houston*, 51 F.3d 512, 516 (5th Cir. 1995). Determination of when plaintiff knew or should have known of the existence of a possible cause of action has two factors: "(1) [t]he existence of the injury; and (2) causation, that

is, the connection between the injury and the defendant's actions." *Id.*; accord *Dixon*, 260 F. App'x at 729.

Young has asserted a number of claims that occurred long before his federal complaint was filed and are barred as prescribed under the applicable statute of limitations. Specifically, Young asserts claims of harassment and retaliation against Officer Herbert for the events that occurred on September 14, 2015 and February 1, 2016, with other general references to Herbert's name-calling until Young's transfer off of the Sleet Unit. Young also claims that Todd and Stogner failed to report the alleged PREA incident when reported to them on September 14 and 16, 2015. He also asserts failure to protect claims against defendants Bickham and Kelly arising from his December 18, 2015 reporting to them about the harassment and his need for protection. He claims that defendant McCain was indifferent to his safety when he denied the administrative grievance complaint on June 2, 2016. He also asserts claims of an inadequate grievance process and failure to protect against LeBlanc, McCain, Crawford, Kennedy, Williams, Tanner, and Seal, based on the denial of his requests for protective custody, including those requests made in October 2015, February 1, 2016, and May 4, 2016. As a direct participant in each event, altercation, and request made for protective custody, there is no question that Young knew about the impact and injury he claims from each instance and when the denial of relief or event occurred.

Young's complaint was received and filed by the Clerk of Court on June 29, 2017, more than one year after these events occurred.[11] The date when the clerk of court receives the complaint, rather than the formal filing date, usually establishes the time of the filing of *in forma pauperis* complaints. *Martin v. Demma*, 831 F.2d 69, 71 (5th Cir. 1987). However, in the *pro se* prisoner context, a "mailbox rule" applies, so that the date when prison officials receive the

---

[11]Rec. Doc. No. 1, Deficient Complaint.

complaint from the prisoner for delivery to the court is considered the time of filing for limitations purposes. *United States v. Petty*, 530 F.3d 361, 363 & n.1 (5th Cir. 2008); *Stevenson v. Anderson*, 139 F. App'x 603, 604 (5th Cir. 2005); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).

Young dated his signature on his original, deficient complaint on June 28, 2017.[12]  This is the earliest date on which prison officials at RCC could have received his complaint for delivery to this Court for purposes of the mailbox rule.  Young's complaint is, therefore, considered filed under the mailbox rule on June 28, 2017.

The one-year prescriptive period applicable to § 1983 claims bars all accrued claims about which Young knew or had reason to know before June 28, 2016, which was one year before the June 28, 2017 mailbox filing of this complaint.  Thus, the claims listed previously in this section, arising between September 14, 2015 and June 2, 2016, must be dismissed as frivolous and for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915 and § 1915A, and 42 U.S.C. § 1997e, because they have prescribed.[13]

### b.    Review of the Remaining Claims

### 1.    Harassment by Officer Herbert

Young contends that Officer Herbert continued to call him snitch and harass him after the PREA complaint he made on September 14, 2015, until he was moved off of the Sleet Unit on July 6, 2016.  To the extent Young's vague allegations of Herbert's continued name-calling and

---

[12]Rec. Doc. No. 1, p. 13; *see also*, Rec. Doc. No. 4-1, p. 13.

[13]The Court is aware that Young has asserted serious factual allegations against Officer Herbert, including those arising from his actions on September 14, 2015 and on February 1, 2016, when Officer Herbert is alleged to have encouraged an inmate to attack Young.  However, while the Court finds such behavior, if true, to be repugnant and unconscionable, Young waited too long to bring the claim before the Court.  As discussed above, Young's complaint was not filed under the mailbox rule until June 28, 2017, which was almost 17 months after the alleged event on February 1, 2016, and any such claim has prescribed.  The Court also takes notice that Young demonstrated his ability to file a complaint in this federal court in 2016 when he aptly filed his first § 1983 complaint challenging disciplinary violations received while on extreme suicide watch in September of 2015.

harassing behavior survived the limitations dismissal addressed above, his claims accruing after June 28, 2016 (one-year prior to the filing of this complaint) also are frivolous under the facts alleged.

Young's overarching claim is that Herbert harassed him and continually referred to him as a rat or snitch while he was housed on Sleet Unit.  The law is clear, however, that mere verbal abuse by a prison guard does not rise to the level of a constitutional violation.  *McFadden v. Lucas*, 713 F.2d 143 (5th Cir. 1983) ("Mere threatening language and gestures of a custodial officer do not, even if true, amount to a constitutional violation.").  Further, allegations of threats and harassment by a guard simply do not state colorable civil rights claims and are not actionable under § 1983.  *See*, *e.g.*, *Calhoun v. Hargrove*, 312 F.3d 730, 734 (5th Cir. 2002); *see also Bender v. Brumley*, 1 F.3d 271, 274 n. 4 (5th Cir. 1993) (noting that verbal abuse is insufficient to serve as the legal basis of a civil rights action.).  As such, his claims against Officer Herbert arising after June 28, 2016, are likewise frivolous and do not state a claim for which relief can be granted.

Young's remaining harassment claims against Officer Herbert should be dismissed as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915 and § 1915A and 42 U.S.C. § 1997e.

## 2. <u>Inadequate Grievance Process</u>

Broadly construed, Young claims that the administrative grievance and disciplinary review procedures at the prison were inadequate because he did not attain the relief he desired and the ranking officials, specifically defendants LeBlanc, McCain, Tanner, Crawford, Kennedy, Williams, and Seal, did not independently conduct or conducted inadequate review of each of his complaints of harassment and requests for protective custody.  These claims also are frivolous.

The filing of prison grievances is a constitutionally protected activity. *Robinson v. Taylor*, 204 F. App'x. 155, 157 (3rd Cir. 2006). However, an inmate does not have a "free-standing constitutionally right to an effective grievance process." *Woods v. First Corr. Med., Inc.*, 446 F. App'x 400, 403 (3d Cir. 2011) (citing *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir.1991)). That is to say, prison inmates do not have a constitutional right to an adequate and effective grievance procedure or to have their complaints investigated and resolved to their satisfaction. *See Bonneville v. Basse*, 536 F. App'x 502, 503 (5th Cir. 2013); *Propes v. Mays*, 169 F. App'x 183, 184-85 (5th Cir. 2006); *Geiger v. Jowers*, 404 F.3d 371, 373-74 (5th Cir. 2005); *Davis v. St. Charles Par. Corr. Ctr.*, No. 10-98, 2010 WL 890980, at *5 (E.D. La. Mar. 8, 2010); *Carter v. Strain*, No. 09-15, 2009 WL 3231826, at *3 (E.D. La. Oct. 1, 2009); *Tyson v. Tanner*, No. 08-4599, 2009 WL 2883056, at *5 (E.D. La. Aug. 25, 2009); *Mahogany v. Miller*, No. 06-1870, 2006 WL 4041973, at *1 (E.D. La. Aug. 3, 2006).

Thus, Young does not state a constitutional claim based upon his perception that his grievances were not properly processed or summarily denied, or that the grievance process itself was inadequate. His claims of an inadequate or ineffective grievance process should be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915 and § 1915A and 42 U.S.C. § 1997e.

### 3.    Failure to Protect

Young also asserts that the defendants LeBlanc, McCain, Tanner, Bickham, Kelly, Kennedy, Williams, Crawford, and Seal failed to protect him from harm at the hands of other inmates while he was housed on Sleet Unit and Sun Unit, despite the fact that he repeatedly provided the names of his "enemies" around the prison. Young's claims are frivolous.

The Eighth Amendment's prohibition on "cruel and unusual punishments," forbids conditions of confinement "which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle v. Gamble*, 429 U.S. 97, 102-103 (1976) (citations omitted); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  This includes all aspects of prison life, including the intentional indifference to an inmate's safety.  *See Id*. at 104; *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994); *Williams v. Hampton*, 797 F.3d 276, 280 (5th Cir. 2015).  An official acts with intentional indifference when he "knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847; *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).

Prison officials, therefore, have a duty under the Eighth Amendment to protect inmates from violence at the hands of other prisoners.  *Edmond v. Eaves*, 70 F. App'x 159, 160 (5th Cir. 2003) (citing *Farmer*, 511 U.S. at 833).  However, "[n]ot every injury suffered by a prisoner at the hands of another rises to the level of a constitutional violation."  *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1995).  A prisoner is only entitled to relief on a failure to protect claim if he can show that he was "incarcerated under conditions posing a substantial risk of serious harm" and that the defendant prison official acted with "deliberate indifference" to a known or reasonably inferred risk.  *Id*. at 400-01 (internal quotations omitted).  The failure of a prisoner to give any advance notice to prison officials of potential danger to his safety is not dispositive of the issue of the official's awareness, *see Farmer*, 511 U.S. at 848, nor is advance notice of a substantial risk of assault posed by a particular fellow inmate a prerequisite, *see Id*. at 849.

In his complaint and *Spears* Hearing testimony, Young admittedly was "almost assaulted" or in a fight where ever he was in RCC, even while housed in a single-man segregation cell on

Sleet Unit.  For example, on May 4, 2016, while housed in isolation, he was involved in a fight

with inmate Bass, who was in the next cell.  On November 13, 2016, he was in a fight with inmate

Stewart outside of the medical unit.  On January 31, 2017, he also was in a fight with his cellmate

Green, whom he described as a tall, homosexual who was improperly moved to the same cell by

Captain Seal.

Attached to his complaint and discussed in his testimony, Young provided several of the

administrative responses and disciplinary reports spanning the relevant period between the alleged

PREA assault and the filing of his federal complaint.  One such report was the June 2, 2016,

response to his November 17, 2015, grievance complaint, RCC 2015-797, in which he was

reminded that, because he was a level one offender assigned to a single man cell on Sleet Unit, he

already had "the safest housing assignment at this facility."[14]  This sentiment was repeated in the

DOC's July 6, 2016, response to Young's appeal.[15]

Young also filed a grievance complaint on February 5, 2016, complaining that Officer

Herbert failed to protect him or caused the fight on February 1, 2016, with an inmate in the lobby

of the medical unit.[16]  Warden Tanner's March 9, 2017, response indicates that, after the matter

was investigated and the video reviewed, Young and the other inmate were both in full restraints

and began to argue.  Sergeant Herbert ordered them to stop arguing and separate, to which both

inmates complied.  The Warden found no rule violations by Herbert and that Young's life was

never in danger.  Young's appeal was also denied after a finding that the first step response was

---

[14]Rec. Doc. No. 4, p.7.

[15]Rec. Doc. No. 4, p.8.

[16]Rec. Doc. No. 4, p.9.

credible and adequate, including confirmation that Major Williams viewed the video footage of the incident.[17]

Young also provided Secretary LeBlanc's disciplinary review board findings, dated May 17, 2017, following the rules violation Young received after his fight with inmate Green in their cell on January 31, 2017.[18]  The board denied the appeal and resolved that the eyewitness testimony confirmed that Young was not acting in self-defense.

As Young concedes in his pleadings and statements, he repeatedly requested protective custody even when he was already housed in a secured, single man cell on Sleet Unit, deemed by officials to be the safest area of the prison.  He also concedes that, when he had an actual fight with another inmate, whether it was his cellmates or an inmate in the hall, he was separated and promptly moved away from that inmate.  Young has done no more than speculate that his requests for protection, when actually needed, were not taken seriously because he did not get the relief he wanted every time he asked to be moved.  As shown from his own pleadings and testimony, his location in the prison had no deterring effect on his ability to engage and fight with other inmates.  Young's allegations are inadequate to state a claim of intentional indifference to his safety and need for protection by these defendants.

Young also suggests that Captain Seal had no authority to put inmate Green in his cell because Green is tall and Young is short.  However, to state a claim for failure to protect, Young would have to allege facts sufficient to show that Seal acted with an intentional indifference to his safety by failing to recognize a known or perceivable danger from Green.  Young has not alleged that he had prior trouble with Green, that he expected to have trouble with Green, or that Seal

---

[17]Rec. Doc. No. 4, p.10.

[18]Rec. Doc. No. 4, p.14.

should have anticipated a risk to Young's safety based on anything about Green.  In other words, Young has not indicated any basis for Seal to have reasonably known or inferred that Young and Green would not get along.  The mere fact that Green was bigger than Young does not necessarily put a reasonable officer on notice that a fight will occur.  *Accord Johnson v. Thaler*, No. 09-313, 2010 WL 3543266, at \*13 (S.D. Tex. Sep. 10, 2010) ("Given the absence of case law to support the proposition that a difference between cell-mates in size alone substantiates a failure to protect claim, it is not plausible to believe that 'all reasonable officials similarly situated would have known' that implementing a housing process that placed larger inmates in cells alongside smaller inmates was unconstitutional.").

Young simply has not alleged sufficient facts to support a claim that the defendants have been intentionally indifferent to his safety or need for protection from other inmates.  For these reasons, Young's failure to protect claims are frivolous and otherwise fail to state a claim for which relief can be granted.  The claims against the defendants, LeBlanc, McCain, Tanner, Bickham, Kelly, Kennedy, Williams, Crawford, and Seal, in their individual capacity, should be dismissed with prejudice pursuant to 28 U.S.C. § 1915 and § 1915A, and 42 U.S.C. § 1997e.

## 4.    <u>No Right to Cell Placement or Transfer</u>

Young has made clear in his complaint that what he has wanted all along was a cell to himself away from all other inmates or a transfer to another facility closer to his home.  However, he has no constitutional right to demand his placement in a particular cell or facility.

It is well settled that the Due Process Clause does not, by itself, grant a prisoner a protected liberty interest in the location of his confinement.  *See Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Yates v. Stalder*, 217 F.3d 332, 335 (5th Cir. 2000); *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996).  Thus, the courts have repeatedly held that a prisoner has no constitutional right to

choose his classification or be housed in a particular cell or wing of a prison. *Yates*, 217 F.3d at 334; *Fontenot v. Gusman*, No. 11-1772, 2012 WL 5196426, at *8 (E.D. La. Oct. 18, 2012); *Thomas v. Rayburn Corr.*, No. 07-9203, 2008 WL 417759, at *3 (E.D. La. Feb. 13, 2008) (order adopting report); *Castillo v. Blanco*, No. 07-215, 2007 WL 2264285, at *10 (E.D. La. Aug. 1, 2007) (order adopting report); *see Luedtke v. Gudmanson*, 971 F. Supp. 1263, 1271 (E.D. Wis. 1997) (citing *Williams v. Faulkner*, 837 F.2d 304, 309 (7th Cir. 1988)) ("Prisoners do not have a liberty interest in remaining in a particular cell block or wing of the prison.").

Similarly, a Louisiana prisoner has no protected liberty interest under the Due Process Clause in being housed in any particular facility, because that discretionary function is statutorily granted to the DOC. The state statute vests discretion in the state officials to determine the placement of prisoners. *Alphonse v. La. Dep't of Pub. Safety & Corrs.*, No. 18-6133, 2018 WL 4252642, at *1 (E.D. La. Sep. 6, 2018) (citing La. Rev. Stat. Ann. § 15:824; *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *Haynes v. Henderson*, 480 F.2d 550, 552 (5th Cir. 1973) (explaining that § 15:824 "specifically provides that an adult prisoner shall not be committed to any particular institution," which "leaves complete discretion in the Louisiana Department of Corrections to decide in what institution a convicted adult offender shall serve his sentence of confinement"); *see also Sandifer v. Tanner*, No. 14-1670, 2015 WL 4168172, at *5 (E.D. La. Jul. 1, 2015); *Addison v. McVea*, No. 13-5264, 2014 WL 7137565, at *3 (E.D. La. Dec. 15, 2014); *Santos v. La. Dep't of Corrs. Sec'y*, No. 95-4215, 1996 WL 89260, at *4 (E.D. La. Feb. 28, 1996) (noting that § 15:824 does not grant DOC prisoners a constitutionally protected right to be housed in a particular facility). Young has failed to state a claim that would entitle him to a transfer within RCC or to another prison. His request for a transfer also is frivolous.

###### C.    State Law Claims

Having determined that plaintiff's federal claims must be dismissed as frivolous, for failure to state a claim, and seeking relief against immune defendants, the Court declines to exercise supplemental jurisdiction over his remaining state law claims of negligence and breach of the duty to protect. *See* 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim ... if ... the district court has dismissed all claims over which it has original jurisdiction."). The general rule in the Fifth Circuit "is to decline to exercise jurisdiction over pendent state-law claims when all federal claims are dismissed or otherwise eliminated from a case prior to trial." *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999) (citation omitted); *Bass v. Parkwood Hosp.*, 180 F.3d 234, 246 (5th Cir. 1999); accord *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("… in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine . . . will point toward declining to exercise jurisdiction over the remaining state-law claims"). As such, the Court should dismiss Young's state law claims without prejudice. *See Bass*, 180 F.3d at 246 ("[T]he dismissal of ... pendent [state] claims should expressly be *without prejudice* so that the plaintiff may refile his claims in the appropriate state court.") (emphasis in original).

### IV.    Recommendation

It is therefore **RECOMMENDED** that Young's § 1983 claims against the defendants, DOC Secretary James M. LeBlanc, former RCC Warden Sandy McCain, RCC Warden Robert Tanner, Deputy Warden Keith Bickham, Assistant Warden Beverly Kelly, Colonel Craig Kennedy, Major Jeff Williams, Major Tim Crawford, Captain Ronnie Seal, Social Worker Gina Todd, Specialist Amy Stogner, and Officer Jules Herbert, each in their individual and official

24

capacities, be **DISMISSED WITH PREJUDICE** under 28 U.S.C. § 1915(b)(2) and § 1915A(b), and as applicable, 42 U.S.C. § 1997e, as prescribed, as frivolous, for failure to state a claim for which relief can be granted, and/or for seeking relief against an immune defendant.

It is further **RECOMMENDED** that Young's state law claims of negligence and breach of duty to protect be **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise its supplemental jurisdiction under 28 U.S.C. § 1367.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 20th day of September, 2019.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**